**Yitzchak Zelman, Esq.**
**California Bar No. 350053**
**MARCUS & ZELMAN, LLC**
**701 Cookman Avenue, Suite 300**
**Asbury Park, NJ 07712**
**Tel: (732) 695-3282**
**Fax: (732) 298-6256**
**Email: yzelman@marcuszelman.com**
**Attorneys for Plaintiff**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| LILIAN CATOERA,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendant. | **Case No.:**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. § 1681 *et seq.*** |

Plaintiff LILIAN CATOERA, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Equifax Information Services, LLC ("Equifax") (referenced herein as "CRA Defendant").

## I. INTRODUCTION

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by Defendant. Plaintiff contends the CRA Defendant Equifax failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3. Venue in the Central District of California is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transact business within this District or are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III. PARTIES

4. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5. Plaintiff is a natural person who resides in Riverside County, California.

6. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Defendant Equifax Information Services, LLC ("Equifax" or the "CRA Defendant") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

8. Equifax's principal place of business is 1550 Peach Tree Street, N.W., Atlanta, GA 30309.

9. During all times pertinent to this Complaint, the CRA Defendant was authorized to conduct business in the State of California and conducted business in the State of California on a routine and systematic basis.

10. During all times pertinent to this Complaint, the CRA Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11. Any violations by the CRA Defendant were not in good faith, were knowing, negligent, willful, and/or intentional.

12. The CRA Defendant failed to maintain procedures reasonably adapted to avoid any such violations.

## IV. FACTUAL BACKGROUND

13. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

14. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports

directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

15. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

16. The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

17. Experian, Trans Union, and Equifax, the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

18. The CRA Defendant regularly obtains consumer bankruptcy information to include in consumer reports.

19. The CRA Defendant regularly seeks out and procure public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports they sell to third parties such as lenders.

20. The diligence the CRA Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in their subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

21. The CRA Defendant's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

22. The CRA Defendant knows the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in their own files.

23. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

24. A consumer who has obtained a bankruptcy discharge and has an account reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

25. The CRA Defendant is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

26. However, the CRA Defendant also knows that pre-petition debts are rarely reaffirmed or successfully challenged in an adversary proceeding.

27. Further, the CRA Defendant knows that if reaffirmation agreements or adversary proceedings (successful or not) exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

28. Additionally, information indicating whether a specific debt was reaffirmed or successfully challenged through an adversary proceeding (rather than discharged) can be easily retrieved from the same sources from which the CRA Defendant independently obtains consumer bankruptcy case information.

29. The CRA Defendant also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

30. Despite the availability of accurate consumer information, the CRA Defendant regularly reports inaccurate information about accounts after consumers receive a Discharge Order.

31. The CRA Defendant regularly publishes consumer information that conflicts with information: provided by data furnishers to the CRA Defendant, already included in their credit files, contained in public records that they regularly access, or sourced through their independent and voluntary efforts.

32. The CRA Defendant routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681(e)(b).

33. Defendant knows the information they report about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in Defendant's own files.

34. Defendant also knows that failing to report the effect of a discharge on consumer account tradelines, while reflecting a bankruptcy on a credit report, would reasonably be understood to declare to the world that that the consumer had been in bankruptcy but had not received a discharge of a particular account. This not only inaccurately/incorrectly reflects an outstanding debt but also would reasonably suggest to a consumer and those reviewing the consumer's credit report that the consumer was guilty of a bad act for which he did not deserve a discharge of a particular debt.[1]

---

[1] Indeed, a bankruptcy discharge is for the "honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 287 (1991), and will not be provided to someone who filed bankruptcy in bad faith, failed to report assets, fraudulently transferred assets, engaged in reprehensible pre-bankruptcy conduct such as fraud, defalcation or embezzlement, or caused willful and malicious injury. 11 U.S.C. §§ 727(a), 523(a).

35. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against the CRA Defendant for their inaccurate credit reporting following a Chapter 7 discharge.

36. Thus, the CRA Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures. More specifically, Defendant is on continued notice that its inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

*Allegations Specific to Credit Reporting of Plaintiff*

37. Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about May 2, 2024, in the United States Bankruptcy Court.

38. Plaintiff received an Order of Discharge on or about August 12, 2024.

39. Thereafter, Plaintiff was not personally liable for any of her dischargeable debts. Upon entry of Plaintiff's Discharge Order, all of Plaintiff's dischargeable debts had zero-dollar balances.

40. The CRA Defendant prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

41. The CRA Defendant obtained notice of Plaintiff's bankruptcy discharge through their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by the CRAs in Plaintiff's consumer reports.

42. In the Public Records section of Plaintiff's consumer reports, the CRA Defendant included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.

43. The CRA Defendant is aware that it is generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of

"discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

44. The CRA Defendant should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance.

45. The CRA Defendant failed to report **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy with a zero-dollar balance.

46. Specifically, the CRA Defendant is inaccurately reporting Plaintiff's LBS Financial Credit ("LBS") account ("the Account"), opened in June of 2019, which predated Plaintiff's bankruptcy filing, with a status of "Charge Off" and a past due balance of $6,887.00.

47. The LBS account was discharged in August of 2024. Therefore, the Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

48. The CRA Defendant did not indicate that the LBS account was discharged in bankruptcy or report the Account with a zero balance, despite reporting Plaintiff's bankruptcy in the Public Records section of Plaintiff's consumer reports and indicating that other pre-bankruptcy accounts were "Discharged/Included in Bankruptcy Chapter 7" and carried zero-dollar balances.

49. The CRA Defendant knew or should have known that Plaintiff's debts were discharged in bankruptcy, including this LBS account.

50. The CRA Defendant reported debts that were in fact discharged in bankruptcy and were therefore required to report these as discharged and/or with a zero balance.

*Plaintiff's Damages*

51. Upon information and belief, had the CRA Defendant accurately reported the LBS account with a zero balance, Plaintiff's credit scores and/or debt to income ratio ("DTI") would have been better, thereby improving Plaintiff's credit worthiness.

52. The false increased debt due to the CRA Defendant's inaccurate reporting also negatively impacts the 30% of credit score which is based on the debt owed divided by credit limits, which impacts post-discharge consumers even more than those who have not filed bankruptcy.

53. As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

54. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, violation of privacy, and anxiety.

55. Defendant's conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

## V. COUNT I
## AGAINST EQUIFAX
## Violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b)

56. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

57. The FCRA requires CRAs to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

58. In this case, Equifax negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information after Plaintiff received a Discharge Order.

59. Equifax independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported it in Plaintiff's consumer reports.

60. When Equifax procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

61. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Equifax from which it is on notice of its unreasonable procedures concerning the reporting of discharged debts.

62. Defendant knew or should have known that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

63. Defendant Equifax knew or should have known of its obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

64. Additionally, Equifax possesses or could easily obtain substantial written materials that detail their duties and obligations under the FCRA, including those that apply when a consumer files for Chapter 7 Bankruptcy.

65. Defendant Equifax knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

66. Yet Equifax inaccurately reported the LBS account, which predated Plaintiff's Chapter 7 Bankruptcy, with statuses other than "discharged in bankruptcy" and balances greater than zero.

67. Despite knowledge of these legal obligations, Equifax willfully and consciously breached its duties under the FCRA. Accordingly, Equifax deprived Plaintiff of Plaintiff's rights under the FCRA.

68. Equifax had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including the bankruptcy case number, court, date of filing and date of discharge.

69. Individual furnishers of account information also notified Equifax of Plaintiff's bankruptcy, as evidenced by tradelines in Plaintiff's consumer reports that are labeled "discharged in bankruptcy" with zero-dollar balances.

70. Yet in this case, Equifax reported the LBS account, which predated Plaintiff's bankruptcy, as delinquent with a balance owed after Plaintiff's discharge (instead of a zero-dollar balance).

71. Defendant Equifax thus violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports, and by also failing to report accurate information when it knew or should have known the information it was reporting is inaccurate, or otherwise contradicted by information known by Equifax, reported to Equifax, or reasonably available to Equifax.

72. As a result of Equifax's inaccurate reporting, Plaintiff's creditworthiness has been damaged.

73. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Equifax's inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

74. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

75. Defendant Equifax is a direct and proximate cause of Plaintiff's damages.

76. Therefore, Equifax is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant for the following:

(a) Declaratory judgment that Defendant Experian, Equifax, and TransUnion violated the FCRA, 15 U.S.C. § 1681e(b);

(b) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VII. JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Dated: March 13, 2026

/s/ Yitzchak Zelman
Yitzchak Zelman, Esq.
California Bar No. 350053
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, NJ 07712
Tel: (732) 695-3282
Fax: (732) 298-6256
Email: yzelman@marcuszelman.com
Attorneys for Plaintiff